Citation Nr: 1542412 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 10-43 780 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for a heart condition (also claimed as a heart murmur).

2. Entitlement to service connection for a bilateral shoulder condition.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Veteran




ATTORNEY FOR THE BOARD

Joshua Castillo, Associate Counsel


INTRODUCTION

The Veteran had active military service from July 1970 to July 1990.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

In February 2015, the Veteran testified at a videoconference Board hearing conducted before the undersigned Veterans Law Judge (VLJ). A transcript of the hearing has been associated with the claims file.

In April 2015, the Board remanded the case for further development.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

The issue of entitlement to service connection for a heart condition (also claimed as a heart murmur) is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

There is no competent and credible evidence establishing that the Veteran currently has a heart condition. 


CONCLUSION OF LAW

The criteria for establishing service connection for a heart condition (also claimed as a heart murmur) have not been met. 38 U.S.C.A. §§ 1110, 1112, 1131, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) redefined VA's duty to assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify the claimant of any evidence that is necessary to substantiate the claim, as well as the evidence VA will attempt to obtain and which evidence he is responsible for providing. 38 C.F.R. § 3.159(b) (2015). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id.; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, the VCAA notice requirements may be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. See Pelegrini, 18 Vet. App. at 121.

In a November 2009 letter, the Veteran was provided notice regarding what information and evidence is needed to substantiate his claim for service connection, as well as what information and evidence must be submitted by the Veteran and what information and evidence will be obtained by VA. He was further advised of how disability ratings and effective dates are assigned, and the type of evidence which impacts those determinations. Thus, VA's duty to notify in this case has been satisfied.

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, VA treatment records, and private treatment records. The Veteran was also afforded a VA examination and medical opinion in March 2013, which the Board finds adequate to decide the claim. Additionally, the Board finds substantial compliance with the prior remand instructions. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). Moreover, with respect to the Veteran's February 2015 Board hearing, the undersigned advised the Veteran of the reason for the RO's denial and advised the Veteran of the evidence necessary to substantiate his claim. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) (2015), nor has he identified any prejudice in the conduct of the Board hearing. As such, the Board finds that no further action is necessary. See Bryant v. Shinseki, 23 Vet. App. 488 (2010) (requiring that the VLJ who chairs a hearing must comply with 38 C.F.R. § 3.103(c)(2) by fully explaining the issues and suggesting the submission of evidence that may have been overlooked). 

As discussed above, the VCAA provisions have been considered and complied with. The Veteran was notified and aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran was an active participant in the claims process by providing evidence and argument. Thus, he was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notices is not shown to have any effect on the case or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits. See Dingess, supra; see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Analysis

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. 3.303(a) (2015). Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

Moreover, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and heart disease becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015).

In a March 2013 VA examination report, the examiner noted that the Veteran reported that he was found to have a heart murmur on his exit physical in 1990. He stated he had no further work-up. He stated he was having problems with shortness of breath at that time. He stated he never sought a work-up for cardiac problems since leaving the military. He had not been told he had a murmur since leaving the military. He noted he had had hypertension for the past 30 years. He denied a history of coronary artery disease, congestive heart failure, myocardial infarction, pacer, "AICD," heart surgery, or valve problems. 

The VA examiner observed that the Veteran's file showed a Report of Medical History dated in July 1970 which showed the Veteran answered "NO" to "shortness of breath" and "pain or pressure in chest." The Veteran was found to have a normal exam on entrance into the service. There was a Report of Medical History dated in February 1990 which showed the Veteran answered "YES" to "shortness of breath" and "pain or pressure in chest." Under the provider elaboration, it stated that the Veteran had chest pain at night in bed. There was an EKG from February 1990 that showed sinus rhythm with sinus arrhythmia. The chest x-ray from February 1990 was normal. The physical examination indicated that the Veteran had a normal heart and vascular exam. There were no other entries in the service treatment records supporting a diagnosis of a heart murmur or other cardiac problem. The VA examiner further observed that there were some private medical notes which did not document any heart disease after military service. There was an EKG from July 2010 which noted sinus rhythm, moderate left anterior descending artery and moderate voltage criteria for left ventricular hypertrophy that may be normal variant. There was a May 2012 primary care physician initial evaluation note that
reported "[hypertension], last MD lyr ago, psoriasis, denies [diabetes mellitus], [coronary artery disease], [myocardial infarction], stroke, liver disease/hepatitis." The exam indicated there was no murmur. There was an August 2012 primary care physician follow-up note with no mention of heart disease or murmur. Currently, the Veteran reported occasional dizziness on standing or walking. He denied chest pain, shortness of breath, syncope, and fatigue. He stated he walked daily with his job. He mowed his yard and did yardwork. He could climb stairs without difficulty. He noted his ambulation and other exercise were limited by problems with his knees and hips.

After conduction of a physical examination, the VA examiner reported that there was no confirmed diagnosis of a heart condition, and that he could not appreciate any murmur on the exam. Thus, in regard to the question of whether the Veteran had a heart condition that was at least as likely as not caused by the heart condition evaluated in 1990, the examiner responded that there was no evidence of any heart disease in the Veteran. 

Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, diagnosis and etiology of a heart disability, fall outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report on symptoms, any actual diagnosis of a heart disability requires medical expertise because symptoms of chest pain and shortness of breath can have many causes thereby rendering the medical question presented here complex. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In any event, the Veteran currently denies any relevant symptoms, and the Board concludes that the medical evidence, which reveals no findings of a heart disability, is of greater probative value than the lay contentions of the Veteran. 

Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C.A. §§ 1110; 1131. In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Degmetich v. Brown, 104 F.3d 1328 (1997) (38 U.S.C.A. § 1131 requires existence of present disability for VA compensation purposes); see also Wamhoff v. Brown, 8 Vet. App. 517, 521 (1996). Accordingly, in the absence of competent and credible evidence of a current heart disability, service connection for a heart disability is not warranted on any basis. 

In reaching the conclusions above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Service connection for a heart condition (also claimed as a heart murmur) is denied. 


REMAND

In March 2013, a VA examiner concluded that the Veteran's bilateral shoulder condition was less likely than not incurred in or caused by the Veteran's service. As rationale, the examiner stated that, the Veteran had complaints of shoulder pain in 1989 and 1990, though there was no indication of an injury in-service. The examiner also noted that the Veteran did not give a history of an injury after service and that there was no post-service medical documentation of continued shoulder pain until the time the Veteran filed for compensation.

In July 2015, the examiner was asked to reconsider his opinion based on the Veteran's testimony that he did not seek medical treatment for his shoulders for many years after service because he self-treated his pain with over-the-counter pain medication. The examiner maintained his opinion that the Veteran's shoulder disability is less likely than not incurred in or caused by the claimed in-service injury, event or illness. The rationale was that the Veteran filed service connection for multiple disabilities upon discharge from service, but did not file for his shoulders until 2012 or 2013. The examiner emphasized that the Veteran did not complain of shoulder problems until 2013, 23 years after service discharge.

The July 2015 medical opinion is inadequate because it is predicated on an inaccurate factual history. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that an opinion based upon an inaccurate factual premise has no probative value). Specifically, the examiner's opinion is based on the fact that the Veteran did not file a claim for service connection for a shoulder disability until "2012 or 2013" and that he did not complain about shoulder problems until 2013. In fact, the record shows that the Veteran filed claims seeking benefits for shoulder conditions in 1990 (compensation), August 2000 (pension), and June 2009 (compensation), and that he gave a history of shoulder pain since service in December 2010. See North Cypress Medical Center (December 6, 2010). Thus, the Board finds that an addendum opinion is necessary. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate); Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that if the Board proceeds with final disposition of an appeal, and the remand orders have not been complied with, the Board itself errs in failing to ensure compliance). 

Accordingly, the case is REMANDED for the following action:

1. The AOJ/AMC is to obtain a medical opinion from a physician (M.D.) regarding the etiology of the Veteran's bilateral shoulder disorder.

The examiner is to provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's current shoulder condition is related to his active service, including complaints of shoulder pain noted in service and on separation from service. In rendering an opinion, the examiner is to consider and address the Veteran's contention that he experienced shoulder pain in service and since service (as evidenced by claims filed for benefits in 1990, August 2000, and June 2009) but that he did not seek medical treatment for his shoulders for many years after service and rather self-treated his pain with over-the-counter pain medication.

All opinions should be supported by a clear rationale, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If it is not possible to provide the requested opinion without resort to speculation, the examiner should state why speculation would be required in this case (e.g., if the requested determination is beyond the scope of current medical knowledge, actual causation cannot be selected from multiple potential causes, etc.). If there are insufficient facts or data within the claims file, the examiner should identify the relevant testing, specialist's opinion, or other information needed to provide the requested opinion.

2. After the development requested above has been completed, the record should again be reviewed. If any benefits sought on appeal remain denied, the Veteran and his representative should be furnished with a supplemental statement of the case and be given the opportunity to respond thereto. The case should then be returned to the Board for further appellate consideration, if in order. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs